GEORGE W. SARSON, RESPONDENT, v. WILLIAM MUELLER, APPELLANT.

Submitted May 29, 1925—Decided November 2, 1925.

1. A sale of growing timber by the owner of the freehold is not a sale of a chattel interest, but of an interest in lands, and an action for trover and conversion will not lie for such an interest in lands.

2. Where a vendee has purchased growing timber from the owner of the freehold with the right of the vendee to sever the same within two years of the date of the sale, and the vendee has failed to sever such timber within the time limited, an action for trover and conversion against the vendor for the trees still standing cannot be maintained.

On appeal from the Supreme Court.

For the respondent, *Joseph M. Roseberry & Son* (*Joseph M. Roseberry,* of counsel).

For the appellant, *Smith & Smith* (*Sylvester C. Smith,* of counsel).

The opinion of the court was delivered by

KAYS, J. The plaintiff brought an action in trover and conversion against the defendant to recover for two carloads of mine props and ties which had been cut by the plaintiff from defendant's lands, and allowed to remain there, and also for the recovery of the plaintiff's property in trees growing and uncut on thirty acres of land belonging to the defendant. It appears that the plaintiff had arranged to purchase from one Peter S. Walters a tract of forty-three acres of land in Franklin township, Warren county. The defendant expressed a desire to the plaintiff to purchase two or three acres of this land after the timber had been cut. It seems that the plaintiff did not care for the land itself, and it was finally decided that a deed for the land should be made to the defendant. Thereupon a deed was made by the

said Peter S. Walters, conveying the said tract of land to the said defendant, William Mueller, in fee-simple, which deed was dated February 6th, 1922. On the same day the plaintiff, George W. Sarson, accepted a receipt from the said defendant for $675 for the timber growing on said land, which receipt read as follows:

"Received February 6th, 1922, of George W. Sarson, $675 for the timber now on a certain wood lot I bought this day of Peter S. Walters, being a lot in Franklin township, Warren county, New Jersey, containing fifty-three acres more or less, adjoining other lands of mine and others, and along the public road leading from Broadway to Montana. Said Sarson not to cut any trees less than seven inches in circumference at the butt, and not to cut nor remove any timber less than five inches in circumference at top, and to have the above timber removed in two years from date.

"WILLIAM MUELLER."

These were the only two written documents, relative to the purchase of the land and timber, which appeared in the case.

It appears from the evidence that Sarson, the plaintiff, cut from said land only a small portion of the timber within the two years limited in the receipt, part of which cut timber at the expiration of said two years still remained on the said land of the defendant.

The evidence offered by the plaintiff was to the effect that some time in the spring of 1923 he asked the defendant for further time within which to cut and remove the timber, for the reason that he, the plaintiff, had no market for the timber in the previous years because of a labor strike at the Scranton coal mines where he expected to ship the same, and because in the year 1923 the man with whom he had contracted to remove the timber after cutting one carload had given up the job. The plaintiff further testified that the defendant had told him he could have one year's further time in which to remove the timber from the land. This the defendant denied, but admitted that in January, 1924, he had told the plaintiff he could have two additional months in which to remove the

timber from one of the tracts which contained about eighteen acres of land. On February 8th, 1924, the defendant sent the following notice to the plaintiff:

"Broadway, N. J., February 8th, 1924.

Mr. George W. Sarson,
Washington, N. J.
Dear Sir:

As the two years have expired in which you was to cut and remove the timber from my two wood lots, this is to give you notice to keep off the said premises, and not cut or remove any more timber, without my permission.

Yours truly,

WILLIAM MUELLER."

On February 16th, 1924, the plaintiff caused to be served on the defendant the following notice:

"To William Mueller,
        Broadway, N. J.

Having received notice from you not to cut or remove any more timber from your two wood lots without your permission, I hereby demand of you the right to take into my possession all the present cut timber and merchantable timber and wood upon your said two wood lots mentioned in your notice to me, my property and also the right to cut and remove from said two wood lots all standing trees and timber over seven inches in circumference at the butt and over five inches in circumference at the top, also my property.

Dated February 11th, 1924.

GEORGE W. SARSON."

The defendant made no response to the notice so served upon him. Thereupon the plaintiff began his suit for trover and conversion on or about February 23d, 1924. The case was tried before the Circuit Court judge and a jury. There was no proof that the defendant himself took actual possession of the timber, either standing or cut, and the case went to the jury on the theory that the denial by the defendant to the

plaintiff of access to the tract of land, for the purpose of cutting the timber then standing and for the purpose of removing such of the timber as was already cut, constituted a conversion on the part of the defendant. The jury rendered a verdict against the defendant and in favor of the plaintiff for $2,000, for which judgment was entered. From the proof submitted this amount must have included the value of the standing timber as well as the timber cut and not removed.

There are sixteen grounds of appeal set forth by the appellant, who is the defendant in this case, and all but one of these are urged in the appellant's brief. These grounds of appeal may be summarized and consolidated as follows:

A. Because the court erred in refusing to strike out the complaint for the reason that the plaintiff alleged conversion of both real and personal property in the standing and cut timber, and also because it sets up the fiction of property lost and found.

B. Because the court permitted proof of the value of standing timber which was not subject to an action for trover and conversion.

C. Because the court denied a motion for nonsuit which was urged for the reason that there was no evidence of a conversion of either the cut or standing timber.

D. Because the court did not properly charge or refused to charge the jury as to the meaning and effect of the notice served upon the plaintiff by the defendant, dated February 8th, 1924, as to whether or not it was intended by that notice to forbid the plaintiff from trespassing upon the lands of defendant after the period of two years had elapsed, or whether it was an attempt to convert to the defendant's own use the standing and cut timber.

The other grounds of appeal dealt with the ruling of the court, the charge of the court or the refusal of the court to charge the jury relative to the value of the timber still uncut and standing on said land after the expiration of said two years. All of which are raised in the reasons mentioned in A and B above.

The main question, we think, was whether or not the sale of the standing timber which remained uncut and unsevered

from the land until after the expiration of the time limited in the written agreement had expired and still remained uncut at the time of the institution of the suit constituted an interest in lands. And if it did so constitute an interest in land, was it such an interest as would be subject to an action for trover and conversion. There seems to be a conflict of authorities in this country and in England on this question. An interest in land can only be created by a deed or written conveyance, and no contract for the sale of such an interest in land is valid unless in writing. It is not material and does not affect this principle that the subject of the sale will be personalty when converted by the purchaser into personalty. 38 *Corp. Jur.* 146, § 15, under the title "Nature of Property in Timber," states the rule as follows: "Standing timber is a part of the realty as much so as the soil itself."

And on page 153 of the same volume (*Corp. Jur.*, § 27) it is stated:

"The majority rule is that a deed or contract of sale of standing timber is a sale of an interest in land, as distinguished from an interest in the trees considered as chattels, and it is held that this is so whether a definite time is fixed for the removal of the timber or not. Where this view prevails, it is generally held that the sale does not sever the trees from the land in contemplation of law and transform them into personal property," citing a long list of cases in twenty-four states in this country, among which is the case of *Slocum* v. *Seymour,* 36 *N. J. L.* 138, and states in a note, after citing the above case on page 154 of the same volume, the reason for the rule as follows:

"In all its other relations to the affairs of men, growing timber is regarded as an integral part of the land upon which it stands; it is not subject to levy and sale upon execution as chattel property; it descends with the land to the heir, and passes to the vendor with the soil. * * * Sales of growing timber are as likely to become the subjects of fraud and perjury as are the other integral parts of the land, and the question whether such sale is a sale of an interest in or concerning lands should depend, not upon the intention of the parties, but upon the legal character of the

subject of the contract, which, in the case of growing timber, is that of realty."

In 17 *Rul. Cas. L. tit. "Logs and Lumber,"* 1070, § 5, the text reads as follows:

"The doctrine established in most jurisdictions follows the principle that growing trees are part of the land, and holds that the title to or interest in the same can be conveyed or transferred only by written instrument, complying with the statute of frauds, and this is held true whether or not the parties contemplate their immediate severance and removal by the vendee. They continue to be real estate after they are sold apart from the land until severance."

It appears that this doctrine is laid down in the case of *Slocum* v. *Seymour, supra,* mentioned above. The doctrine laid down in that case is cited in many text-books and by many authors throughout this country. The judges who sat in the Slocum case were Chief Justice Beasley and Justices Bedle, Dalrimple and Scudder, and the opinion of the court was delivered by Mr. Justice Bedle. The facts in that case were that Slocum conveyed to Seymour, by a certain deed, all the wood and timber upon a certain tract of land, with the right in the vendee to cut and remove the same before July 1st, 1862, which was about a year and a half after the date of the deed. The title of Slocum to a part of the tract proved defective, and suit was brought upon an implied covenant of title in the Seymour deed. The charge was based upon the assumption that the parties had treated this as a sale of personal property, and that, therefore, a warranty of the title was implied by law. Mr. Justice Bedle, in his opinion, says:

"Although there is a great diversity in the cases, whether a sale of standing timber by the owner of the freehold is of a chattel interest, I am satisfied that such a sale is of an interest in lands, and not controlled by the doctrine of warranty of title in sales of personal property. In no sense can trees, the natural and permanent growth of the soil, be regarded as partaking of the character of emblements, or fructrus industrials, but are a part of the inheritance, and can only become personalty by actual severance, or by a sever-

ance in contemplation of law as the effect of a proper instrument of writing.

"It may be conceded, and such is the law, as in the case of *Smith* v. *Surman,* 9 *B. & C.* 561, that there may be a valid parol contract for the sale of timber as a chattel where it is to be cut and delivered by the vendor, although designated as being upon certain land, and where the contract contemplates no property to the vendee in the trees until after they are actually cut down and reduced to chattels; yet, where the sale is of an interest in the trees standing, without having been in legal effect severed by the force of a previous written instrument, and although the American cases differ upon the subject, the best considered of them, and those which I think declare the law, hold that such a sale is of interest in lands, within the meaning of the statute of frauds," and thereupon cites several cases.

And in the same case Mr. Justice Bedle further says:

"There may also be valid parol contracts with the owner of the soil, with reference to their sale and delivery as chattels in contemplation of severances, where no interest in the trees standing is intended by the bargain, the same as contracts for the sale of lumber to be cut, sawed and delivered as such; but when the contract comprehends an interest in the trees standing, with the right in the vendee to sever them, the subject-matter is then an interest in land within the statute of frauds. Such was clearly the character of the contract between these parties, as the deed shows an intention to convey, and does convey, an interest in the wood and timber standing, when a part of the freehold in the hands of the vendor. The deed secures to Seymour an actual property in the trees as a part of the land, and not merely a right of action under contract of purchase of personal property."

Plaintiff's counsel refers to the case of *Irons* v. *Webb,* 41 *N. J. L.* 203. The opinion in this case was written by Chief Justice Beasley, who sat in the former case of Slocum *v.* Seymour. In his opinion Chief Justice Beasley does not refer to the case of Slocum *v.* Seymour, mentioned above, which, of course, he must have had clearly in mind in delivering his opinion in the case of Irons *v.* Webb. The case of

Irons *v.* Webb is distinguishable, and differs widely from the case of Slocum *v.* Seymour. In the case of Irons *v.* Webb the timber was excepted from the conveyance of lands, and the syllabus states:

"Where, in a deed of conveyance of lands, the timber was excepted, *held,* that a stipulation that such timber should be removed in a given time did not make such exception conditional on such removal."

In that case the trees were all cut down and corded up and severed from the realty. There was no question before the court in that case as to any standing or growing timber, and there was no sale of growing timber from a vendor to a vendee. The legal effect of the exception in the deed was to sever from that which was granted that which was excepted, so that the latter never passed by the grant. The Chief Justice in that case does not attempt to say whether timber growing on the land and excepted by the vendor is an interest in real estate or personalty. All he says is that it makes no difference whether the trees were standing or cut, the title to the same (be it an interest in real estate or personalty) is still in the vendor by reason of the exception, and that such exception is unconditional, and it would make no difference, therefore, whether the trees were standing or not, for the mere felling of the trees would not satisfy the requirements of such condition.

In the case under consideration it makes no difference whether the plaintiff or defendant had possession of the trees, for the trees were still standing and growing, and constituted an interest in realty with the right of the plaintiff to convert them into personalty. An an action of trover and conversion would not lie for any interest in realty. In addition to this, the plaintiff was not to cut any trees that were larger than seven inches in circumference at the butt or five inches in circumference at the top within the two-year period. This fact might show the intention of the parties was that the trees during the two-year period would derive some benefit from the soil, and such a condition seems to have been taken into consideration by some courts, holding a contrary view to the rule in this state, where the test has been as to

whether standing timber was an interest in realty or was personalty, to consider it as personalty if an immediate severance was contemplated by the agreement, and realty if an immediate severance was not contemplated, and the timber was to derive, after the making of the agreement, some additional benefit from the soil.

The case of *Wyckoff* v. *Bodine, 65 N. J. L.* 95, referred to in the plaintiff's brief, expresses no contrary view to the case of Slocum *v.* Seymour. In the Wyckoff case it does not appear that the timber which was converted by the defendant to his own use was standing timber, and the trial judge, in referring to the same in his charge to the jury, refers to it as lumber on the land of the defendant. It is therefore assumed that the timber in question in that case was cut timber. No reference is made in the Wyckoff case to the case of Slocum *v.* Seymour, which would have been referred to, no doubt, if the timber were standing and not severed from the real estate.

We are therefore of the opinion that the grounds for reversal urged by the defendant, in so far as the same relate to the right of the plaintiff to maintain an action for trover and conversion against the defendant for standing timber, are well founded. This result has been reached by adopting the rule laid down in the case of Slocum *v.* Seymour, and followed in most of the other states as to the sales or conveyances of growing timber and trees, being an interest in real estate.

The verdict of the court below is set aside, with costs.

*For affirmance*—THE CHIEF JUSTICE, PARKER, MINTURN, KATZENBACH, JJ.    4.

*For reversal*—TRENCHARD, KALISCH, BLACK, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, MCGLENNON, KAYS, JJ.    9.